IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kendall Green, | ) |
| Plaintiff, | ) Civil Action No.2:10-cv-03080-CMC-BHH ) ) |
| v. | ) **REPORT AND RECOMMENDATION** ) **OF MAGISTRATE JUDGE** ) |
| Sgt. D. Anderson of Lee CI; Lt. Richardson, SMU Security; Ms. L. Johnson, Grievance Coordinator; Major James C. Dean, Security Over Institution; and Warden Padula, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

The plaintiff, a state prisoner proceeding pro se, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon two motions: (a) Defendants' Motion for Summary Judgment (Dkt. No. 36), and (b) Plaintiff's Motion for Summary Judgment (Dkt. No. 59).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The plaintiff brought this action on or about December 7, 2010. On April 7, 2011, Defendants filed a Motion for Summary Judgment. (Dkt. No. 36.) By order filed April 8, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 37.) On or about July 27, 2011, Plaintiff filed a Motion for Summary Judgment, which was also filed as a Response in Opposition to Defendants' Motion for Summary Judgment. (See Dkt. No. 59.) Defendants' filed their Response in

Opposition to Plaintiff's motion on August 31, 2011. (Dkt. No. 72.) Plaintiff filed a Reply. (Dkt. No. 76.)

## **PROCEDURAL FACTS**

Plaintiff, who is currently housed at Perry Correctional Institution ("PCI"), alleges claims pursuant to 42 U.S.C. § 1983 and state law. Plaintiff filed his original Complaint on or about December 7, 2010, and filed a verified Amended Complaint on or about January 3, 2011. (See Dkt. No. 1; Dkt. No. 13.) Plaintiff alleges that on August 18, 2010, while incarcerated at Lee Correctional Institution ("LCI"), he "was the victim of an excessive use of force and assault by Sgt. D. Anderson." (Dkt. No. 13 at 3.) Plaintiff states that on that day, while inside the cafeteria, Defendant Anderson approached Plaintiff and stated "in a very provocative, harsh, and belligerent manner, 'Put your fucking I.D. on Green! I'm getting tired of talking to you!'" (Id.) In his Amended Complaint, Plaintiff acknowledges that he "was out of compliance," insofar as he was not wearing his identification, but that he "had no problem with getting into compliance." (Id.) Plaintiff states, however, that "the manner in which Sgt. D. Anderson was addressing [Plaintiff] provoked [Plaintiff] to respond with the same profane language," and Plaintiff "[t]hus . . . cursed" Defendant Anderson "in the same manner." (Id. at 3-4.)

Plaintiff alleges that after he cursed Defendant Anderson, Anderson "grabbed his gas canister (MK-9, Topcop mace) and sprayed [Plaintiff at] point-blank range in the face with it." (Id. at 4.) Plaintiff states that Anderson then "knocked [Plaintiff] to the ground by forcibly slamming [Anderson's] arm against [Plaintiff's] throat area," which Plaintiff indicates "felt like a blow to [his] throat, and momentarily made it hard for him to breathe combined with the effects of the mace." (Id.) According to Plaintiff, "MK-9 Topcop made is the 'big' can of gas which officers are only supposed to use when two or more inmates are in a 'physical altercation.'" (Id.) Plaintiff alleges that Defendant Anderson "acted with a malicious and

sadistic intent to cause [Plaintiff] harm" and "did not handle the situation as required by SCDC/ Policy Procedure OP-22.14, titled 'Inmate Disciplinary System.'" (Id.) Plaintiff contends that Defendant Anderson's "actions w[ere] cruel and unusual punishment." (Id. at 6.)

Plaintiff further states that on August 26, 2010, he submitted a grievance "against Sgt. D. Anderson" for Anderson's actions on August 18, 2010. (Id.) Plaintiff alleges that on August 30, 2010, Ms. Johnson, the Inmate Grievance Coordinator, sent the grievance back to Plaintiff "unprocessed, denying [Plaintiff] the right to redress the 8-18-10 incident." (Id.)[1] According to Plaintiff, he "could have filed a grievance on the 8-18-10 incident" pursuant to various SCDC policies. (Id. at 7.) Plaintiff alleges another inmate informed him that Plaintiff was "suppose[d] to be allowed to redress the 8-10-10 issue 'and' [his] disciplinary conviction pursuant to SCDC Policy GA-01.12." (Id. at 8.)

Plaintiff alleges that at the subsequent disciplinary hearing, he was convicted of "failing to obey and striking an SCDC employee." (Id.) Plaintiff states that he appealed the disciplinary conviction by filing a grievance but was "denied a chance to redress Sgt. D. Anderson's actions" toward Plaintiff because "in disciplinary appeals[,] . . . you can only redress the issues of the conviction due to alleged technicalities, or misinterpretation of evidence or to appeal a sentence when the sanctions imposed w[ere] allegedly not proportionate to the . . . violation." (Id.)

---

[1]Plaintiff alleges that Ms. Johnson's response stated,
When an inmate is involved in an incident that results in a disciplinary hearing, that issue/complaint becomes non-grievable. Therefore, this complaint is being closed without a decision on its merit. Once you have been to your disciplinary hearing and if you feel that there were technical/procedural errors regarding your hearing, you may submit a grievance at that time." (Dkt. No. 19 at 6.)

3

Plaintiff also alleges that after the August 18, 2010 incident, he was placed in SMU, and Lieutenant Richardson assigned Plaintiff "to a cell with a prisoner that [Plaintiff] once had physical altercations with on Lee's yard." (Id. at 9.) Plaintiff states,

> When he escorted me to the cell and I noticed that I was being placed in a cell with a prisoner that I had problems with, I told him about the situation but he ignored my right, and plea, to be separated from prisoners that I've had problems with. He said, "I'm tired of you with all that 'gang' foolishness. Y[ou're] going to learn to get along today because I don't have nowhere [sic] else to put you." I then began protesting because Lt. Richardson knew that me and this prisoner not only had problems with each other but were from "rival" affiliations. We were nemeses due to our affiliations.

(Id.) Despite this alleged warning to Richardson, Plaintiff states that Richardson "made [Plaintiff] go in the cell to live with [his] foe." (Id.) According to Plaintiff, he and his cell mate "fought, physically, numerous times in the cell." (Id.)

Plaintiff states that he went to Court on September 13, 2010, and returned to LCI on September 15, 2010. (Id. at 9-10.) Plaintiff alleges that when Richardson walked Plaintiff back to his cell, "the whole time [Plaintiff] was telling [Richardson] that [he] need[ed] an 'immediate' room change before [Plaintiff] or [his] cell mate ended up hurt badly." (Id. at 10.) According to Plaintiff, both Richardson and Officer Johnson left Plaintiff in the cell with his "foe." (Id.)

Plaintiff alleges that on September 15, 2010, while he was preparing for bed, his cell mate stabbed him with a "homemade knife (shank)." (Id.) Plaintiff states, "While struggling for my life, Lt. Richardson, Sgt. Davis, Cpl. Hawkins, and Officer Wilson came to the cell about 15-20 minutes later and escorted me to medical . . . ." (Id.) Plaintiff alleges that while he was in medical, Lieutenant Durant took pictures, and Defendant Dean asked Plaintiff what happened. (Id.) Plaintiff states that Dean "basically ignored it all and tried to get me to keep it a secret." (Id.)

Plaintiff states that on September 17, 2010, he filed a grievance "on Lt. Richardson's indifference to [Plaintiff's] life[ and] the stabbing incident which was a result of his indifference." (Id.) Plaintiff alleges that when he had not received a response, he wrote to Defendant Johnson, who indicated that she did not receive "any grievance that [Plaintiff] filed on Lt. Richardson." (Id. at 10-11.)

Plaintiff alleges that as a result of Defendants' actions, he has "suffered . . . physical and mental injury" consisting of "blurred vision, depression, anxiety, and a sense of hopelessness resulting in insomnia." (Id. at 11.) He further complains that a year "has been taken away in visitation suspension" that will keep Plaintiff "from . . . seeing [his] daughter and other loved ones." (Id.) Plaintiff states that "[t]o the extent . . . Defendants are sued in their official capacity," Plaintiff "seeks an injunction that all the defendants be disqualified and terminated from their employment with SCDC." (Id. at 14.) "To the extent . . . Defendants are sued in their individual" capacities, Plaintiff seeks, *inter alia*, compensatory and punitive damages. (Id.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id.

(quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, Defendants filed a Motion for Summary Judgment on April 7, 2011. (Dkt. No. 36.) Plaintiff filed a Motion for Summary Judgment on July 27, 2011; this filing also serves as his Response in Opposition to Defendants' motion. (See Dkt. No. 59.) The undersigned will address the parties' arguments in turn.[2]

### A. Excessive Force Claim

Plaintiff claims that Defendant Anderson violated his constitutional rights, using excessive force on Plaintiff by spraying Plaintiff with chemical munitions and by knocking Plaintiff to the ground. (See Am. Compl.) Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Id. at 1179. The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably

---

[2] Defendants argue that they should be dismissed because "there has been no service of process." (Defs.' Mem. in Supp. at 8.) On reviewing Docket Entry Number 25, it is possible that Defendants were not properly served. (See Dkt. No. 25.) However, as Plaintiff is incarcerated, it is the duty of the United States Marshal Service to serve Defendants. Moreover, while Defendants contend in their Memorandum in Support of their Motion for Summary Judgment that they were not properly served, none of Defendants' affidavits address this issue. The undersigned therefore declines to dismiss Plaintiff's claims for alleged improper service.

6

perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986).

The Fourth Circuit's decision in Williams v. Benjamin, 77 F.3d 756 (4th Cir.1996), provides additional guidance for courts when considering claims relating to the use of mace, tear gas, or other like substances. These additional considerations inform the second and fourth prongs of the Whitley test, as "it is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" Williams, 77 F.3d at 763 (quoting Soto v. Dickey, 744 F.2d 1260, 1270 (7th Cir.1984)). For this reason, the Fourth Circuit has closely scrutinized the use of tear gas or mace in correctional facilities. The Fourth Circuit has held that

> mace can constitutionally used in small quantities to prevent riots and escapes, or to control a recalcitrant inmate.... A limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate. Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

Id. (quotations and citations omitted). However, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment," as "even when properly used, such weapons 'possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim.'" Id. (quoting Slackan v. Porter, 737 F.2d 368, 372 (4th Cir.1984)).

In the case *sub judice*, it is undisputed that Plaintiff was out of compliance with prison rules: he was not wearing his identification at the time Anderson approached him. In addition, after Anderson instructed Plaintiff to put his identification on, Plaintiff "got upset" and stated to Anderson, "You can ask me in a nicer way than that. Fuck you." (Dkt. No. 59-1 at 46 of 109.) It also appears undisputed that (a) the amount of chemical munitions used

7

was 64 grams of Top Cop, and (b) if Plaintiff struck Anderson, he did not do so until *after* Anderson had sprayed Plaintiff. (See Dkt. No. 59-1 at 94 of 109.)

Many of the remaining facts, however, are disputed. Plaintiff states that he "had no problem with getting into compliance" and **was putting his ID on** when Anderson sprayed him with chemical munitions. (Am. Compl. at 3 of 14; Dkt. No. 59-1 at 46 of 109.) Defendants' version of the events is quite different. Anderson stated in his Affidavit,

> I have had occasion to use chemical munition on inmate Kendall Green as a result of his being asked to correct his appearance and produce his identification. Green refused; was given a directive; refused again; began to act in a threatening manner; and I subsequently administered chemical munitions in order to bring the situation and inmate under control.

(Dkt. No. 36-2 at 1-2.) In addition, while Defendants present evidence that Plaintiff acted "in a threatening manner," Plaintiff presents evidence that Plaintiff was at no time combative and that Anderson sprayed Plaintiff while Plaintiff was complying with Anderson's directive. (See Pl.'s Aff. ¶ 4; Dkt. No. 59-1 at 46 of 109.) In fact, Plaintiff presented the Affidavit of Joshua Jeter which states that Jeter saw Anderson "approach [Plaintiff] angrily with his big can of MK-9 Top Cop mace in his hand while saying 'put your fucking ID on Green; I'm tired of talking to you.'" (Jeter Aff. ¶ 6; Dkt. No. 59-1 at 23 of 109.) Jeter also states that Plaintiff "cursed" Anderson while Plaintiff was "putting on his I.D. card" and that Anderson "raised his MK-9 Top Cop mace and sprayed" Plaintiff after Plaintiff cursed Anderson. (Jeter Aff. ¶¶ 6-7; Dkt. No. 59-1 at 23-24 of 109.)

Applying the Whitley factors in the light most favorable to the Plaintiff, the undersigned recommends concluding there is a genuine issue of material fact regarding whether Anderson used excessive force upon Plaintiff and therefore recommends denying Defendants' Motion for Summary Judgment. Plaintiff's version of events indicates that Anderson used 64 grams of chemical munitions on Plaintiff while Plaintiff was complying

with Anderson's directive. Plaintiff also presents evidence that as a result of Defendants' actions, he has "suffered . . . physical and mental injury" consisting of "blurred vision, depression, anxiety, and a sense of hopelessness resulting in insomnia." (Am. Compl. at 11.) Under this version of events, there was no need for the application of force, as Plaintiff was complying, and Plaintiff was not a threat to the safety of staff or inmates.

Likewise, applying the Whitley factors in the light most favorable to Defendants, the undersigned recommends denying Plaintiff's Motion for Summary Judgment. Defendants' version of events indicates that Anderson used chemical munitions on Plaintiff after Plaintiff refused to obey two direct orders and began acting in a threatening manner. Defendants dispute Plaintiff's contention that he was complying with orders, instead presenting evidence that Anderson sprayed Plaintiff "in order to bring the situation and inmate under control." (Dkt. No. 36-2 at 1-2.) Under this version of events, there was a need for application of the force, and Plaintiff was acting in a threatening manner.

In light of the dispute over genuine issues of material facts, the undersigned recommends denying both Plaintiff's and Anderson's Motion for Summary Judgment[3] on the excessive force claim.[4]

---

[3] Plaintiff also claims that Anderson "committed assault" on Plaintiff. (Am. Compl. at 12 of 14.) It appears Plaintiff attempts to assert a state law claim for assault and battery. "A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient; an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." Gathers v. Harris Teeter Supermarket, Inc., 282 S.C. 220, 230, 317 S.E.2d 748, 754-55 (Ct. App. 1984) (citing Herring v. Lawrence Warehouse Co., 222 S.C. 226, 72 S.E.2d 453 (1952)). In light of the dispute over whether Anderson's use of force was to restore order or to inflict harm, the undersigned recommends denying summary judgment on this claim.

[4] Defendants also move for summary judgment on the grounds of qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1)

**B. Failure to Protect Claim**

In this claim, Plaintiff contends that Defendants violated his constitutional rights by failing to protect him from an assault by his cell mate. "The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 722-23 (4th Cir. 1994) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). As the Fourth Circuit stated in Brown,

> Not every injury suffered by a prisoner at the hands of another establishes liability against a prison official, however. To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, "the deprivation alleged must be sufficiently serious." Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir.2003) (internal quotation marks and citation omitted). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions." Id. . . . .
> 
> Second, a prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). When an inmate makes a challenge under the Eighth Amendment, "the requisite state of mind is one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted). A prison official demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Id. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Case v. Ahitow, 301 F.3d 605, 607 (7th Cir.2002).

Brown, 612 F.3d at 723.

---

the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). The undersigned concludes that summary judgment on the ground of qualified immunity is not appropriate given the facts in dispute on the excessive force claim.

In the case *sub judice*, the undersigned recommends denying both Plaintiff's Motion for Summary Judgment and Richardson's Motion for Summary Judgment on this claim.[5] It is undisputed that on September 15, 2010, Plaintiff was assaulted by his cell mate and that Plaintiff suffered puncture wounds in this assault. However, facts material to this claim are in dispute.

Plaintiff presented evidence that prior to being placed in a cell with Inmate James Hankerson on or about August 18, 2010, Plaintiff informed Defendant Richardson that Plaintiff and Hankerson "previously had a knife fight." (Dkt. No. 59-1 at 46-47 of 109.) According to Plaintiff, Defendant Richardson placed Plaintiff in the cell anyway, stating, "I'm tired of ya'll with that 'gang' foolishness. Y[ou're] going to learn to get along today because I don't have nowhere [sic] else to put you." (Id.) Plaintiff states he stayed in the cell for about a month and "fought physically" with Inmate Hankerson several times in the cell, and that Plaintiff so informed Richardson. (Id. at 47.) Plaintiff also states that on September 15, 2010, when Richardson was escorting Plaintiff back to his cell after Plaintiff had been to court, Plaintiff informed Richardson that he and his cell mate "needed to be separated immediately before one of us became hurt badly," and that Plaintiff and his cell mate were "still . . . fighting physically." (Id.) Plaintiff was assaulted by his cell mate on September 15, 2010. On these facts, a jury could conclude that Richardson was deliberately indifferent to an excessive risk to Plaintiff's safety.

---

[5]The undersigned recommends denying Richardson's motion on this claim but granting summary judgment on this claim to all other Defendants. Plaintiff presented evidence that Richardson knew Plaintiff and his cell mate had previously engaged in a knife fight and should not be housed together. However, Plaintiff presents no evidence that any other Defendants had this knowledge. The doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-99 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). None of the other Defendants can be held liable on the failure to protect claim, as there is no evidence they had any personal involvement or knowledge.

On the other hand, Defendants presented the Affidavit of Richardson, who stated therein,

> I have had no occasion to assign cells in order to punish inmate Kendall Green or any other inmate. I am aware that at one time inmate Green was dissatisfied with his assignment claiming ongoing problems with the cell mate but no independently confirmable evidence of any true threat or problem between inmate Green and the proposed cell mate resulted and thus inmate Green was required to remain in the cell to which he was assigned.

(Richardson Aff. ¶ 6; Dkt. No. 36-3 at 1.) Giving every reasonable inference to Richardson, as is required in evaluating Plaintiff's Motion for Summary Judgment, there is evidence that upon hearing Plaintiff's allegation that he could not be housed with Inmate Hankerson, Richardson investigated but concluded there was no "independently confirmable evidence of any true threat or problem" between Plaintiff and Inmate Hankerson. On these facts, a jury could conclude that Richardson was not deliberately indifferent to an excessive risk to Plaintiff's safety but instead investigated Plaintiff's allegations and concluded there was no threat to Plaintiff's safety.

Because there is a genuine issue of material fact, the undersigned recommends (a) denying Plaintiff's Motion for Summary Judgment, (b) denying Richardson's Motion for Summary Judgment, and (c) granting summary judgment to all other defendants on this claim.[6]

**C. Claims against Defendant Johnson**

Plaintiff's claims against Johnson center on Johnson's responses to various grievances submitted by Plaintiff. (See generally Am. Compl.) Plaintiff claims that Defendant Johnson violated his "first amendment right to seek redress of grievance number 2437-10" and "deprived Plaintiff of his Fourteenth Amendment rights . . . to equal protection by

---

[6]Defendants also seek summary judgment on this claim on the grounds of qualified immunity. Much like the claim for excessive force, the undersigned recommends denying summary judgment on this ground due to the facts in dispute.

denying him the chance to redress grievance number 2437-10[] and his Fourteenth Amendment right to due process . . . via depriving him of his liberty interest to seek redress of grievance number 2437-10." (Am. Compl. at 12.)

The undersigned recommends granting summary judgment to Johnson. Plaintiff's allegations that Johnson improperly responded to his grievance(s) do not amount to a violation of Plaintiff's constitutional rights, even if Johnson violated grievance procedures. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]here is no constitutional right to participate in grievance proceedings."); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); see also United States v. Caceres, 440 U.S. 741, 754-55 (1979) (noting that "none of respondent's constitutional rights" were violated "by the agency violation of its own regulations"); Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").[7]

**D. Claims against Defendant Dean and Defendant Padula**

Plaintiff claims that while he was in medical after being attacked by Inmate Hankerson, Defendant Dean asked Plaintiff what happened, and Plaintiff told Dean how Richardson "had ignored [Plaintiff's] pleas for a cell change and disregarded [Plaintiff's] life." (Am. Compl. at 10 of 14.) Plaintiff states that Dean "basically ignored it all and tried to get

---

[7] Plaintiff also appears to assert that Defendants Johnson, Richardson, Dean, and Padula "conspired against the Plaintiff for the purpose of depriving Plaintiff . . . of his constitutional right to seek redress of his grievance . . . and his right of equal protection." (Am. Compl. at 13 of 14.) "To establish a civil conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right . . . ." Hinkle v. City of Clarksburg, W.Va., 81 F.3d 416, 421 (1996) (citing Hafner v. Brown, 983 F.2d 570, 577 (4th Cir. 1992)). As noted above, Johnson's responses to Plaintiff's grievances do not amount to a constitutional violation. As a result, Plaintiff's civil conspiracy claim related to grievances fails.

13

[Plaintiff] to keep it a secret," informing Plaintiff "to 'let it go' and that if [Plaintiff] did he'd 'let [Plaintiff] back down to general population early." (Id.) With respect to Defendant Padula, Plaintiff alleges,

> Defendant Padula deprived Plaintiff of his 14th Amendment right to due process by: (a) subjecting Plaintiff to the authority of Sgt. D. Anderson, who assaulted and used excessive force against the Plaintiff due to deficient training, [and] (b) subjecting Plaintiff to the authority of IGC L. Johnson who denied Plaintiff his right to seek redress of grievance number 2437-10, due to her deficient training.

(Id. at 12.)

The undersigned recommends granting summary judgment to Defendants Dean and Padula. Plaintiff's allegations against Dean simply do not amount to a constitutional violation. Turning to Defendant Padula, the undersigned notes that Padula is not liable for constitutional violations of employees simply because Padula is the warden. As noted above, the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-99 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that in a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction

14

amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted).

In the case *sub judice*, there is no evidence to support a finding that Padula was deliberately indifferent or tacitly authorized the offensive practices. Plaintiff does not claim that Padula failed to act "in the face of . . . widespread abuses." Instead, Plaintiff appears to base this claim on alleged negligent training. It is well settled, however, that negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct. . . . "). In any event, there is no evidence that any Defendant was improperly trained. Defendants presented evidence that Anderson was "trained in the use of chemical munitions including minimum reasonable force, conflict resolution, force continuum, reporting use of force, and medical attention after the use of chemical munitions among other things." (Anderson Aff. ¶ 5.) The undersigned therefore recommends granting summary judgment to Defendants Dean and Padula.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment (Dkt. No. 59) be DENIED. It is further RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 36) be GRANTED IN PART and DENIED IN PART. More specifically, the undersigned recommends denying the motion as to (a) the claim for excessive force against Defendant Anderson and the accompanying state law claim, and (b) the claim for failure to protect against Defendant Richardson. The undersigned recommends granting the motion in all other respects, thereby ending the case against Defendants Johnson, Dean, and Padula.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 18, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).